**Velma GILLAM, Individually, and on behalf of all others similarly situated**

**v.**

**Moon LANDRIEU, Individually, and in his official capacity as Mayor of the City of New Orleans, Clarence B. Giarrusso, Individually, and in his official capacity as Superintendent of Police, New Orleans Police Department, Howard O. Pittman, Individually, and in his official capacity as Commander, Auto Pound Division, New Orleans Police Department, Joseph V. DiRosa, Individually, and in his official capacity as a member of the New Orleans City Council, Frank Friedler, Jr., Individually, and in his official capacity as a member of the New Orleans City Council, A. L. Davis, Individually, and in his official capacity as a member of the New Orleans City Council, John D. Lambert, Individually, and in his official capacity as a member of the New Orleans City Council, Phillip C. Ciaccio, Individually, and in his official capacity as a member of the New Orleans City Council, Broderick A. Bagert, Individually, and in his official capacity as a member of the New Orleans City Council, Joseph Giarrusso, Individually, and in his official capacity as a member of the New Orleans City Council, "John Does," unnamed and unknown in number Individually, and in their capacities as agents, employees, or subordinates of the foregoing named defendants.**

Civ. A. No. 76–3762.

United States District Court,
E. D. Louisiana.

Aug. 9, 1978.

---

Elliot G. Snellings, New Orleans, La., for plaintiffs.

Freeman R. Matthews, Asst. City Atty., New Orleans, La., for defendants.

Robert M. Hearin, Jr., Russell & DeRussy, New Orleans, La., for movant Amicus Curiae and the New Orleans Chapter of the Louisiana Consumers' League.

## MEMORANDUM OPINION

HEEBE, Chief Judge:

Before this Court are the questions of whether to preliminarily and permanently enjoin the City of New Orleans, Louisiana from enforcing certain traffic regulations alleged to be constitutionally deficient on a

number of procedural due process grounds. Each challenge arises as a claim brought by a named plaintiff both individually and on behalf of others similarly situated. This suit was originally filed on behalf of plaintiff Velma Gillam and all others similarly situated. Thereafter, the complaint was twice amended: first, to add Delores Bush, and all others similarly situated, as plaintiffs, and secondly, to add Jerri L. Klein and all others similarly situated, as plaintiffs. To facilitate discussion of the legal issues involved, this opinion will first cover the claims of plaintiff Delores Bush and the class she represents, then those of Velma Gillam and the class she represents, and lastly those of Jerri L. Klein and the class she represents. The parties have stipulated both the propriety of handling these matters as class actions and the definitions of the classes.

The parties agreed to try the issue of liability separately from that of damages. The liability issue was submitted to the Court on stipulated facts and briefs by the parties concerning the relevant legal principles. Having studied these submissions, the Court is ready to rule. The Court makes the following findings of fact and conclusions of law in support of its decisions set forth below.

## FINDINGS OF FACT

A. The Bush Claim and the Associated Class Claim (Attack on Section 38–274)

1. On Thursday, December 2, 1976, the unoccupied 1968 two door Oldsmobile Cutlass, license number 496 B 511, owned by plaintiff Delores Bush, was ticketed by a New Orleans Police Department (N.O.P.D.) officer for being parked in a residential neighborhood for more than 24 hours, and without giving plaintiff Bush an opportunity for a hearing or any notice prior to the taking of said vehicle, the N.O.P.D. towed and impounded her vehicle at the N.O.P.D. Auto Pound on Claiborne Avenue.

2. Subsequently, upon discovering through her own initiative that her vehicle had been ticketed, towed and impounded, plaintiff sought a release of her vehicle

from the Auto Pound. Said vehicle had been transferred to the Almonaster Pound. Plaintiff obtained release by depositing her validly issued Louisiana driver's license with the personnel at the Auto Pound on December 10, 1976. No notice had been sent to plaintiff Bush as of the time of the release of her vehicle on December 10, 1976. Storage fees had accrued against her vehicle at the rate authorized per Section 38–274, as amended (set forth in appendix A). Plaintiff Bush joined this suit for injunctive and declaratory relief, and for individual damages, on December 23, 1976.

Plaintiff Bush's vehicle was ticketed, towed and impounded pursuant to Section 38–274, as amended, of the Code of the City of New Orleans (hereinafter referred to as Section 38–274). Under Section 38–274, N.O.P.D. officers, or other duly authorized agents, issue parking tickets to unoccupied vehicles allegedly found to be in violation of "any traffic law" and have the vehicle removed by an N.O.P.D. tow truck and then impounded at the Police Auto Pound located at the intersection of Claiborne Avenue and St. Louis Street, New Orleans, Louisiana.

3. Pursuant to Section 38–274, any unoccupied vehicle found to be allegedly violating "any traffic law" is subject to immediate ticketing, towing, and impoundment. The N.O.P.D. and the New Orleans City Counsel have not classified the numerous traffic offenses regarding unoccupied vehicles into separate categories of those offenses for which a vehicle may be ticketed and impounded as opposed to those offenses for which a vehicle may be only ticketed and not impounded.

4. The N.O.P.D. makes no attempt to notify the owner of a vehicle about to be impounded, nor do they provide an opportunity for a hearing to such owners prior to impoundment. The N.O.P.D. or the Traffic Engineers has not erected on the city streets notice or "tow-away zone" signs covering every traffic law for which an unoccupied vehicle, if found to be in violation of, may be subject to immediate impoundment.

5. Once an unoccupied vehicle has been impounded at the N.O.P.D. Claiborne Auto Pound, should the vehicle owner report there to obtain release of his or her vehicle such release may be obtained in a limited number of different ways. Under Section 38–274 the impounded vehicle may be surrendered to the owner thereof upon either placing with the authorized personnel at the Pound a cash bond in the amount of thirty ($30.00) dollars or by depositing his/her validly issued Louisiana chauffeur's or operator's license. The personnel at the Pound will not accept a non-resident's drivers license validly issued under the laws of the non-resident's state. The vehicle owner may also waive trial, enter a plea of guilty to the traffic offense, pay the parking fine, towing fee and storage charges and obtain a release of his/her vehicle.

6. At the time of filing the stipulations of fact in this case, the personnel at the Auto Pound are accepting Louisiana resident's chauffeurs and operators licenses in lieu of cash bond for release of the vehicle to the owner.

7. After the vehicle is impounded at the N.O.P.D. Claiborne Pound and remains there unclaimed for twenty-four (24) hours, it is then subject to removal to the N.O.P.D. Almonaster Extension Pound where it is held at least thirty (30) days before it is sold or otherwise disposed of according to Section 38–301 of the Code of the City of New Orleans (which is set forth in appendix B).

8. No notices are sent to the vehicle owner from the Claiborne Pound. It is at the Almonaster Extension Pound that notices are sent to the last owner of record, as obtained from the license plates, brake tag, or automobile serial number. The police officer who sends out all notices is Officer Paul Bachemin. The notices are sent by certified mail. No notice is given by means of a telephone call.

9. After a vehicle has been held at the N.O.P.D. Claiborne Pound for 24 hours, it is transferred to the Almonaster Pound. After the vehicle arrives at the Almonaster Pound, Officer Paul Bachemin is responsible for sending out the notices.

10. Pursuant to Section 38–274, any vehicle held at an N.O.P.D. Auto Pound for over twenty-four (24) hours is charged an assessment of three dollars ($3.00) per day, or any part thereof, exclusive of the first 24 hours as a storage fee. Said storage fees do accrue against the vehicle prior to the notification of the vehicle owner of the fact that such fees are presently accruing. Storage fees are assessed on a daily accruing basis after the first 24 hours even though the vehicle owner may have no knowledge that his/her vehicle has been impounded or that a daily accruing storage fee is being assessed against his/her property.

11. In the event that an owner of an impounded vehicle deposits his/her validly issued Louisiana chauffeurs or operators license or deposits a cash bond with the personnel at the Pound, said owner will be given a date to appear for trial in the Traffic Court of the City of New Orleans. The normal interval period between depositing bond or drivers license and the date of trial is four (4) weeks.

12. In the event that a vehicle owner is subsequently found to be guilty of the traffic violation, which was the cause of such towing and impoundment, after appearing for a trial on the merits in the Traffic Court of the City of New Orleans, said vehicle owner must pay pursuant to Section 38–274 the violation-ticket fine together with the towing fee and any accrued storage charges.

13. The class of persons represented by plaintiff Delores Bush comprises all of those who have had or may in the future have their unoccupied vehicles ticketed, towed and impounded in the City of New Orleans, Orleans Parish, Louisiana, pursuant to Section 38–274 of the Code of the City of New Orleans, as amended on September 14, 1976.

B. The Gillam Claim and the Associated Class Claim (Attack on Section 42–43)

1. On Thursday, October 7, 1976, the dark green Oldsmobile (1966), license number 39 B 586, owned by Velma Gillam, was

allegedly found to be trespassing on private property in the parking lot of a National Auto Supply store near the corner of Claiborne Avenue and Forstall Street in New Orleans. Pursuant to Section 42–43 (which is set forth in appendix C), an N.O.P.D. officer caused said vehicle to be towed to the N.O.P.D. Auto Pound on Claiborne Avenue. Subsequently, charges were filed in Municipal Court. On October 13, 1976, said vehicle was transferred to the Almonaster Extension Pound. Notice was mailed by certified letter to Velma Gillam's mother, Alberta Bowier, on October 19, 1976. This notice was not received by Mrs. Bowier until November 3, 1976. Storage fees were assessed against said vehicle at the rate of $3.00 per day or any part thereof, exclusive of the first 24 hours. On December 6, 1976, Velma Gillam filed this suit for injunctive and declaratory relief and for individual damages, and, pursuant to an agreement with opposing counsel the vehicle was subsequently released to Plaintiff Gillam upon her depositing her validly issued Louisiana driver's license with the authorities at the Almonaster Pound. Charges against plaintiff Gillam are still pending in Municipal Court in regard to her alleged violation of Ordinance 828, Section 42–43.

2. Pursuant to Section 42–43 of the Code of the City of New Orleans, under which Section the vehicle owned by plaintiff Velma Gillam was towed and impounded, an N.O.P.D. officer who finds an unoccupied vehicle to be allegedly trespassing on private property may either have such vehicle towed to the N.O.P.D. Auto Pound, or have the vehicle immobilized by the installation of an immobilization device to that vehicle, or simply affix to the vehicle the proper written summons to appear at the Municipal Court for the City of New Orleans.

3. Should the vehicle, allegedly found to be trespassing while parked on private property, be towed to the N.O.P.D. Auto Pound, said vehicle is subject to the identical conditions for release to the owner thereof as if the vehicle were towed and impounded for being in violation of a traffic ordinance (i. e. cash bond or deposit of

Louisiana driver's or chauffeur's license.) After 24 hours the vehicle would be transferred to the Almonaster Extension Pound where notice would eventually be mailed to the owner as in traffic violation situations. Vehicles towed under Section 42–43 would also be subject to the same schedule of storage fees as in traffic violation situations (i. e. $15.00 towing fee, $3.00 per day or any part thereof, exclusive of the first 24 hours, as accrued storage charges).

4. Section 42–43 does not provide for notice to be sent to the vehicle owner informing him/her of the fact that his/her vehicle has been impounded and storage charges are accruing. Section 42–43 does not provide for fees assessment of these towing and storage against the vehicle owner. However, notice and assessment of storage and towing fees are handled by the N.O.P.D. in the same manner as if the vehicle had been towed for a traffic offense under Section 38–274. Therefore, fees for storage may accrue despite the fact that notice had not yet been sent to or received by the vehicle owner.

5. The class of persons represented by plaintiff Velma Gillam consists of all those who have had or may in the future have their unoccupied vehicles towed and impounded in the City of New Orleans, Orleans Parish, Louisiana, pursuant to Section 42–43 of the Code of the City of New Orleans.

C. The Klein Claim and the Associated Class Claim (Attack on Section 42–43)

1. On February 17, 1977, the 1977 grey Ford LTD, license number 608 B 643, owned by plaintiff Jerri L. Klein, was found to be allegedly trespassing in a parking area annexed to the Continental Trailways Bus Station on Tulane Avenue in New Orleans. Pursuant to the practices of the N.O.P.D. under Section 42–43, an N.O.P.D. officer placed an immobilization boot on plaintiff Klein's vehicle.

2. Upon finding her vehicle immobilized Mrs. Klein requested the N.O.P.D. officer to remove said boot. Plaintiff's request was

refused until she paid $15.00 in cash to said officer as an "immobilization fee", which had to be paid prior to the removal of said boot. Plaintiff was not afforded notice or an opportunity for a hearing prior to the assessment of the $15.00 immobilization fee. Plaintiff was issued a summons to appear in the Municipal Court in New Orleans for the alleged violation of Section 42–43. Said charges were subsequently dismissed by the Municipal Court prior to the trial. The $15.00 immobilization fee was not refunded to plaintiff Klein.

3. Should the vehicle allegedly found to be trespassing on private property not be towed to the Auto Pound, it is also the practice of the N.O.P.D., its officers and agents, in acting pursuant to the authority of Section 42–43 of the City Code, to attach an immobilization device (hereinafter referred to as the "Police Boot") to said unoccupied vehicle, thereby making use and access to said vehicle impossible. No notice or opportunity for a hearing is provided to the vehicle owner prior to installation of the Police Boot.

4. It is the common practice of the N.O.P.D. not to remove said boot from the vehicle until the vehicle owner pays to the N.O.P.D. an immobilization fee of fifteen ($15.00) dollars in cash. The N.O.P.D. provides no opportunity for a hearing or notice prior to the assessment of the $15.00 cash immobilization fee, and the vehicle owner can not regain use of his/her vehicle until such fee has been paid and the immobilization boot removed. Said immobilization fee is non-refundable.

5. Upon paying the $15.00 immobilization fee to the N.O.P.D. the vehicle owner is issued a summons to appear in Municipal Court for a trial on the merits on the alleged offense of Section 42–43. Section 42–43 gives the Municipal Court jurisdiction to decide the guilt or innocence of the vehicle owner in regard to said offense. Section 42–43 does not specifically provide for jurisdiction over arguments related to the amount and property of the towing and accrued storage fees or the immobilization fees.

6. The class of persons represented by plaintiff Jerri Klein consists of those who have had or may in the future have their unoccupied vehicles immobilized by installation of an immobilization device in the City of New Orleans, Orleans Parish, Louisiana, pursuant to Section 42–43 of the Code of the City of New Orleans.

## CONCLUSIONS OF LAW

As indicated in the Minute Entry of January 6, 1978, this case presents three separate procedural due process challenges to the present New Orleans traffic ordinances: a challenge to ordinance section 38–274 in the suit by Delores Bush and the class she represents, a challenge to ordinance section 42–43 in the suit by Velma Gillam and the class she represents, and a challenge to ordinance section 42–43 in the suit by Jerri L. Klein and the class she represents. Having already determined that the property interests which plaintiffs assert are of such nature to fall within the protective ambit of the Due Process Clause, there only remains the determination of what process is due before those interests can constitutionally be deprived.

The test which governs this Court's determination of what process is due was initially set forth in *Mathews v. Eldridge*, 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1975), as follows:

". . . identification of the specific dictates of due process generally requires consideration of three distinct factors: First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail."

This test has most recently been interpreted and approvingly applied in *Memphis v. Craft*, —— U.S. ——, 98 S.Ct. 1554, 56 L.Ed.2d 30 (1978).

## A. ORDINANCE SECTION 38–274 and the DELORES BUSH CLASS

The constitutionality of ordinance section 38–274 and the practices thereunder are subjected to fourfold attack by plaintiff Bush and the class she represents:

1. Section 38–274 is allegedly denying procedural due process by being overbroad in authorizing the towing/impounding of unoccupied vehicles which are found to be allegedly violating "any traffic law."

2. Procedural due process is allegedly denied because the notice sent pursuant to 38–274 is constitutionally inadequate and is not promptly sent.

3. Procedural due process is allegedly denied because non-refundable storage fees accrue against the vehicle prior to notice being sent to or received by vehicle owner.

4. Procedural due process is allegedly denied because there is no hearing or forum available for a vehicle owner to object to and limit the amount of the accrued storage and towing fees.

### 1. Overbreadth.

The basic overbreadth contention of plaintiff is that allowing towing or impounding for violation of "any traffic law" is overbroad because it authorizes police seizure of vehicles in many instances where immediate seizure is not necessary to promote public safety, health and welfare. Instances which plaintiff believes support this contention are the "traffic laws" which prohibit (1) parking twenty-four hours in a residential neighborhood (as Delores Bush did), (2) failure to set the hand-brake, (3) parking more than four hours in a downtown neighborhood by a non-resident vehicle, and (4) overtime parking at a meter.

■ The fundamental question in an overbreadth analysis is whether the government is using a means which sweeps unnecessarily broadly in trying to achieve a legitimate end and thus invades an area of protected freedom. On its face, does the ordinance attempt to prohibit constitutionally protected conduct? The Court thinks not. Parking more than twenty-four hours in a residential neighborhood is not a constitutionally protected right. Failure to set the hand-brake is not a constitutionally protected right. Parking more than four hours in a downtown neighborhood by a non-resident vehicle is not a constitutionally protected right. Overtime parking at a meter is not a constitutionally protected right. A vehicle owner who engages in any such prohibited conduct is not effectuating a constitutionally protected right but is rather being antisocial. He does have the right to use of his automobile, a constitutional right to use of property. But that right is not entirely unfettered. It is subject to the legitimate limitations placed on its exercise by the state pursuant to its police power. Towing and impounding are reasonable procedures to effectuate that police power against antisocial car owners.

■ Plaintiff seems to contend that unless there is an emergency, the city cannot tow or impound a vehicle suspected of having been parked in a residential neighborhood for more than twenty-four hours. This proposition seems very unreasonable. Whether a neighborhood is residential or commercial, there is an interest in keeping streets clear of unnecessary obstructions. The city keeps the streets clean as possible from ordinary litter. An abandoned vehicle is not merely unsightly (as is all litter) but also creates serious inconvenience to motorists and risk of accident to the extent it impedes traffic flow. Accordingly, the city has a legitimate interest in removing such vehicles as soon as reasonably possible. The exact period of time that a vehicle should be allowed to sit on a residential street before the city will tow or impound it is set by ordinance at twenty-four hours, a period which this Court has no reason to question nor evidence suggesting the period is anything but a legitimate determination by the city in light of its expertise in handling traffic regulation problems.

■ The city's concerns in regulating the use of its streets are not limited to public safety and convenience, but also encompass public health and welfare. A par-

ty who parks his car in the same street location for more than the allowed period of time is, in effect, "hogging" that public resource and not allowing other members of the public to get their fair share, certainly a serious impingement on the public welfare. A vehicle which remains in the same location for a lengthy period prevents the sanitation department from cleaning the portions of the street occupied by the car, threatening the public health by allowing accumulation of filth and litter.

■ Notwithstanding these general considerations, the specific test set forth in *Mathews* clearly mandates a determination of procedural inadequacy in the traffic ordinance. First, it is clear that there is a strong private interest in use of a vehicle. As stated in *Stypmann v. City of San Francisco*, 557 F.2d 1338 (9th Cir. 1977):

> The private interest in the uninterrupted use of an automobile is substantial. A person's ability to make a living and his access to both the necessities and amenities of life may depend upon the availability of an automobile when needed.

The risk of an erroneous deprivation of the private interest through the procedures presently used (i. e., seizing cars for violation of "any traffic law") does seem substantial. Arguably, an experienced police officer who is familiar with the streets in his assigned area should have no trouble spotting those vehicles which have been parked for too long a time. Plaintiff has introduced no evidence whatsoever on the frequency of erroneous seizures but merely asserts that the risk of erroneous deprivations exists and that erroneous deprivations do occur. However, in an area with many parked vehicles, it is unrealistic to expect a policeman to rely solely on memory to distinguish vehicles parked 23 hours from those parked 25 hours.

Plaintiff suggests that there would be probable value in setting up additional procedural safeguards, such as categorizing two groups of traffic ordinances (those for violation of which seizure would be warranted and those whose violation would not create an emergency and hence would not justify seizure), or limiting seizure of vehicles to congested areas of the city except in emergency situations, or labelling areas as "tow-away" zones and placing traffic signs alerting the public to the risk of seizure. The Court agrees that one or more of such additional safeguards would be helpful. In improving the quality of its regulation of parking in residential districts, the city should also consider the use of procedures which would lessen the chance of towing away vehicles parked less than twenty-four hours.

The government's interest is in providing the best service possible to promote the health, safety and welfare of its citizens. The present ordinance is so worded to give the government's officials unbridled discretion whether to tow or not to tow a vehicle violative of any traffic law. There would be no great fiscal or administrative burden in making the city's ordinance more specific with respect to exactly which ordinances present proscriptions whose violation will subject the car to risk of towing and which will not incur such risk. Once the traffic ordinances in the City Code are made more specific, the fiscal and administrative burdens of implementing such ordinances would not be great. If the city chose to put up signs to demarcate tow-away zones, the only added expense and effort would be for placement and maintenance of the signs. Police officers in the street would have no problem enforcing such a more specific set of traffic regulations; rather they would be given more precise guidance on when towing was appropriate, and thus would not have to rely solely on their discretion. Citizens would be made specifically aware of the instances in which their conduct was deemed sufficiently serious to warrant the relatively harsh penalty of deprivation of their vehicle, whereas now they do not know when they will be subjected to this sanction and when they will not. The government's interest in an informed citizenry would thus be furthered by making the ordinance more specific, and the citizens' interest in knowing what they can and cannot do and what sanctions apply to specific conduct would also be served.

At the present time, not every infraction of the city's traffic ordinance regarding over-parking in a residential area is penalized by towing. The city should let its citizens know by means of a less overbroad ordinance when such over-parking will result in towing and when it will not. Otherwise, application of the ordinance does not appear evenhanded, and there is no safeguard to insure that it will be applied evenhandedly.

2. Defects in Notice.

Once a vehicle has been removed from the streets by the city, the city should promptly notify the owner of at least its whereabouts, the alleged offense, the means of securing its release, and the fact that the vehicle will be disposed of if it is not reclaimed. Indeed, the city imposes upon itself the duty to send notice of the place of impoundment of a vehicle to the last owner of record (as determined by the license tags thereon), if the vehicle impounded has not been reclaimed within twenty-four hours of the time of its impoundment. Ordinance Section 38–274. However, in practice the city blatantly violates this requirement. The city normally delays ten days or two weeks before sending notice. For instance, plaintiff Delores Bush's vehicle was seized on December 2, 1976 and released to her on December 10, 1976; though a period of eight days passed from impoundment to release, the New Orleans Police Department had never sent the required notice to plaintiff Bush. The failure of the city to promptly notify plaintiff Bush of her vehicle's impoundment as required by the city's own ordinance was itself a deprivation of her constitutional right to due process of law.

Considering again the test of *Mathews*, we note again the importance of the individual's interest in his automobile (although bearing in mind that if plaintiff was herself immobilized due to her medical condition, she could not herself have used the car, although she might have made it available to relatives or friends for use in or in exchange for doing errands on her behalf or otherwise accommodating her). Failure to send prompt notice leaves a car owner in a state of needless anxiety, which can eventuate in false reports of car theft to police and insurance companies.

The risk of an erroneous deprivation through failure to send prompt notice is obvious. Every time there is an improper seizure, the length of that seizure will tend to be increased if the owner is not notified as compared to the length of time that a seizure would continue if the owner were notified promptly. The probable value of sending prompt notice is that it would generate quicker action by the owner to reclaim his car.

The government's interest once a car is impounded is in proceeding expeditiously to a determination of the propriety of its retention of the vehicle and collection of any penalties or fees to which it may be entitled. The government is not engaged in the business of providing car storage, but rather does this as a necessary incident to its policing of the streets. The sooner the government sends notice to owners, the sooner the owner can make steps to reclaim his car. The city's interest is in having cars reclaimed, not in retaining them in the pound. Sending prompt notice will further this government interest; failure to send it frustrates the government's interest. The fiscal and administrative burden of sending such prompt notice would not be great. One employee, one ink pen and lots of notices, envelopes and postage stamps could do the job. Assuming that the job could not be assigned to an already existing employee of the city, it would not be difficult or expensive for the city to secure the services of necessary additional personnel to assure prompt sending of notice.

Because of its conclusion that failure to send prompt notice was a deprivation of procedural due process rights to plaintiff Bush, this Court need not here address plaintiff's numerous attacks on the adequacy of the notice in cases where notice is sent.

### 3. Assessment of Storage Fees Prior to Notice.

 Pursuant to ordinance section 38–274 storage fees accrue after the first twenty-four hours at a rate of $3.00 per day. Since the Court concludes that the ordinance contemplates sending a notice after the first twenty-four hours of impoundment, it rejects plaintiff's contention that the ordinance provides for assessment of fees before the sending of notice. However, the past practice of the city in delaying the sending of notice taken together with the provision for assessment of storage fees after the first twenty-four hours of impoundment tended to enhance the amount of storage fees assessed without notice to owners that fees were accruing and thus deprived them of their property interest in the monies involved without due process of law.

Looking to *Mathews*, we first note the interest of the car owner in the funds which would be lost in the form of increased storage fees over what he would have had to pay had he known that storage fees were being assessed and thus induced to act faster to reclaim his car. The procedure of automatically assessing storage fees combined with delay in giving notice enhances the risk of assessment of more fees than the individual would have incurred had he known that such fees were being assessed. Automatic assessment of fees after sending of prompt and adequate notice is not itself violative of procedural due process rights of vehicle owners. No additional procedural safeguard is necessary, as long as the city conforms with the already existing procedural requirement of sending notice promptly after the first twenty-four hours of impoundment. The government's interest is receiving payment for storage services which it provides to those who have been sent notice that their vehicle is impounded and accruing such charges but who nevertheless allow the charges to accrue; the assessment of the storage fee is not an added penalty for violating the traffic law. Since this Court does not impose any new, additional or substitute procedural requirements on the automatic assessment of fees after sending of notice, there are no additional fiscal or administrative burdens to be considered in this connection.

### 4. Lack of Forum or Hearing on Amount and Propriety of Storage Fees.

Since this Court has concluded that plaintiff Bush was denied procedural due process through the various means described above, it need not address plaintiff's contention that she was deprived of a forum or prompt hearing on the amount and propriety of storage fees in order to reach a decision on liability in favor of plaintiff Bush.

## B. ORDINANCE SECTION 42–43 and the CLASS REPRESENTED BY VELMA GILLAM

The constitutionality of ordinance section 42–43 and the practices thereunder are subjected to fivefold attack by plaintiff Gillam and the Class she represents, alleging:

1. It is the practice of the New Orleans Police Department acting under this ordinance to assess towing and storage fees without statutory authority.

2. The ordinance does not provide for notice.

3. The notice sent is not prompt and adequate.

4. Storage fees are assessed prior to sending notice.

5. There is no hearing afforded in Municipal Court to object to the imposition, amount of propriety of storage towing fees.

### 1. Alleged Lack of Statutory Authority.

 Plaintiff contends that since section 42–43 is a municipal law, not a traffic law, there is no authority for the imposition and collection of towing and storage fees for vehicles impounded for violating section 42–43. This contention is plainly without merit. In pertinent part, ordinance section 38–274 states:

> Any person found guilty of *any parking violation* by a court of competent jurisdiction shall, upon conviction thereof, be assessed a towing fee of $15.00 and after

the first twenty-four hours, a storage fee of $3.00 for each day that the vehicle involved was impounded, together with such fine as may be imposed by the court in accordance with law. (Emphasis added)

Section 42–43 plainly is a section under which "parking violations" as that term is used in section 38–274 can occur. Section 42–43 regulates unauthorized parking of motor vehicles on private property. It is true that section 42–43 does not contain an explicit cross-reference to section 38–274, but counsel have not cited nor is this Court aware of any authority to support the proposition that the chapters of the Code of the City of New Orleans, Louisiana are not to be read in *pari materia*. In particular, we are aware of no authority preventing a section of the Motor Vehicles and Traffic Chapter (chapter 38) from being read in pari materia with a section of the Municipal Criminal Code (chapter 42). Section 38–274 provides authority for assessing towing and storage fees on impounded vehicles involved in parking violations; Section 42–43(b) expressly authorizes impoundment of driverless motor vehicles parked without authorization on private property.

2. Alleged Lack of Notice Requirement.

Plaintiff further attacks section 42–43 for its lack of explicit requirement of notice to the vehicle owner prior to assessment of storage fees. However, the assessment of fees for storage is not made under section 42–43 but rather is made under the terms of section 38–274, which in pertinent part reads:

If the vehicle impounded has not been reclaimed within twenty-four (24) hours of the time of its impoundment, the New Orleans Police Department shall notify the vehicle's last owner of record (as determined by the license tags thereon) of the place of impoundment of the vehicle.

This express provision for assessment of storage fees after prompt notice does not violate the requirements of procedural due process, if complied with. However, since the city has made a practice of not complying with the prompt notice requirement and

did not do so in the Gillam case (plaintiff Gillam's car was seized under 42–43 on October 7, 1976 but she was not sent notice of its seizure until October 19, 1976), the assessment of storage fees against plaintiff Gillam before notice was sent would comprise a violation of the prohibition of deprivation of property without procedural due process.

3. Defective Notice.

As observed in the prior paragraph, the notice did not meet the promptness requirements mandated by procedural due process and therefore plaintiff's procedural due process right was violated.

4. Assessment of Storage Fees Prior to Sending Notice.

The same reasons apply in the Gillam case as in the Bush case and mandate a finding of violation of procedural due process.

5. Alleged Lack of Hearing.

Because the Court has found sufficient grounds to conclude a lack of procedural due process, it need not address the lack of hearing contention.

C. ORDINANCE SECTION 42–43 and the CLASS REPRESENTED BY JERRI KLEIN

The constitutionality of ordinance section 42–43 and the practices thereunder are attacked on two grounds:

1. The practice of immobilization of unoccupied vehicles *per se* is unconstitutional.

2. Collection of a $15.00 cash non-refundable immobilization fee without notice and hearing is unconstitutional.

1. The Practice of Immobilization.

Plaintiff asserts that the practice of immobilization *per se* is unconstitutional as a seizure of property without due process of law. The contention is that unlike towing a vehicle which removes it from an allegedly illegal location for the protection of the

public health, safety or welfare in circumstances of need for very prompt action, immobilizing it evidences the fact that there is no element of emergency requiring prompt action. The government's interest when it immobilizes a vehicle is not the safety or convenience of the public but rather the collection of a $15.00 immobilization fee, according to plaintiff.

Plaintiff's contention overlooks the fundamental fact that a very therapeutic governmental purpose and not merely fee collection is served by allowing the police to immobilize vehicles parked in improper places. The boot serves as a clear example to other motorists who might also be tempted to so park their vehicles that they will be subjecting themselves to the possible inconvenience of losing the use of their car. The city thus serves two purposes by allowing the alternative of immobilizing rather than towing or mere ticketing: a general deterrent purpose is accomplished by allowing others to see the law being enforced and a specific deterrent purpose with respect to the particular individual who has "misparked" by subjecting him to the inconvenience of not being able to use his car. Ordinance section 42–43 is part of the Municipal Criminal Code, and it is one of the well-settled principles of criminal law that one of the chief objectives of criminal law is to deter crime.

Should it subsequently appear that the installation of the immobilization device was unwarranted, the city will have to face whatever civil consequences might ensue, such as wrongful deprivation of use of property, false imprisonment, etc. as the facts and circumstances of the particular case may warrant.

As observed by the Supreme Court in *Mathews, supra* 424 U.S. at 333, 96 S.Ct. at 902, "This court consistently has held that some form of hearing is required before an individual is finally deprived of his property interest." The deprivation imposed by immobilization can hardly be characterized as "final"; rather it is temporary.

■ Considering the *Mathews* factors, we note first the high private interest in use of one's automobile. The risk of erroneous deprivation of such interest by immobilization of vehicles parked without authorization on private land does not seem particularly great; if a car is parked on someone's land and is unauthorized to be so parked, the fact is not usually difficult to ascertain by contacting the owner of the land, who will probably be the person reporting the unauthorized vehicle in the first place. Plaintiff has not suggested any additional or substitute procedural safeguards to lessen this small risk of erroneous temporary deprivation, but merely suggests total abolition of the immobilization technique. The Court does not believe that there would be any probable value in having additional or substituted procedural safeguards before the immobilization device is attached. The government function of enforcing the Municipal Criminal Code and the purpose of deterring commission of violations are amply furthered by the immobilization technique. No pre-immobilization additional safeguards seem necessary to make the use of immobilization comport with the requirements of the procedural due process doctrine.

2. Collection of Non-refundable Immobilization Fee Without Notice and Hearing.

■ The common practice of the New Orleans Police Department is to remove the immobilization device installed pursuant to section 42–43 only *after* the vehicle owner has paid $15.00 in cash to the Police Department. Such occurred in the case of plaintiff Klein. And she could not get the $15.00 back, even when the charges against her were dropped, for the immobilization fee is non-refundable. The $15.00 de-immobilization fee is non-refundable, so the government taking constitutes a "final deprivation" under *Mathews*. Some form of hearing is thus required before such a deprivation can occur. There is no justification for the city's failure to accept a bond for the $15.00 immobilization fee as part of the procedures by which immobilization is lifted, just as it accepts a bond for the fine assessable against a towed vehicle. Collec-

tion of fees in such circumstances as the Klein case without a prior hearing is violative of the principles of procedural due process articulated in *Mathews v. Eldridge, supra; Fuentes v. Shevin,* 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972); *Remm v. Landrieu,* 418 F.Supp. 542 (E.D.La.1976). Before collection, some forum should be available to challenge the propriety of assessing as well as collecting said immobilization fees.

Accordingly,

IT IS THE ORDER OF THE COURT that Section 38–274 of the Code of the City of New Orleans, Louisiana is unconstitutional on its face since it is overbroad and unconstitutional in practice since notice is not sent promptly and storage fees are assessed prior to sending of notice to owners whose vehicles have been impounded and said practices are hereby ENJOINED.

IT IS THE FURTHER ORDER OF THE COURT that the practices of non-prompt notice and assessment of storage fees prior to sending notice to owners of vehicles impounded pursuant to 42–43 are unconstitutional and that said practices be ENJOINED.

IT IS THE FURTHER ORDER OF THE COURT that the practice of collecting non-refundable immobilization fees without notice and hearing on the propriety of assessing and collecting such fees on vehicles immobilized pursuant to Section 42–43 is unconstitutional and said practice is hereby ENJOINED.