**Bonnie Lee GRANT and Andrea Barron, on behalf of themselves and all others similarly situated, Plaintiffs,**

v.

**CITY OF CHICAGO, a Municipal Corporation; Fred Rice, individually and in his capacity as the Acting Superintendent of the Chicago Police Department; and Lester S. Dickinson, individually and in his capacity as Acting Commissioner of Streets and Sanitation for the City of Chicago, Defendants.**

No. 83 C 7757.

United States District Court,
N.D. Illinois, E.D.

Oct. 3, 1984.

Harry P. Bush/Lynda Wesley, Chicago, Ill., for plaintiffs.

Gregory Wojkowski, Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

ASPEN, District Judge:

▮ Plaintiffs Bonnie Lee Grant ("Grant") and Andrea Barron ("Barron"), on behalf of themselves and others similarly situated,[1] bring this action under 42 U.S.C. § 1983 to challenge the constitutionality of Paragraph 27–435 of the Municipal Code of Chicago, which authorizes the immobilization of a motor vehicle when there are ten or more outstanding traffic violation notices pending against the vehicle's owner.[2] Plaintiffs allege that this ordi-

---

1. Though plaintiffs allege they are suing on behalf of others, they have not yet moved to certify a class.

2. Paragraph 27–435 of the Municipal Code of Chicago provides:

27–435(a) A motor vehicle, parked upon the public way at any time may, by or under the direction of an officer or member of the Chicago Police Department or an employee of the Department of Streets and Sanitation, be immobilized in such a manner as to prevent its operation, if there are ten or more outstanding or otherwise unsettled traffic violation notices, or warrants issued for such violations, pending against the owner of such motor vehicle.

27–435(b) Upon immobilization of such motor vehicle, the officer or employee shall cause to be placed on such vehicle, in a conspicuous manner, notice sufficient to warn any individual that such vehicle has been immobilized and that any attempt to move such vehicle might result in damage to such vehicle. As soon as practicable, the officer or employee shall inform the owner of the immobilized vehicle of the nature and circumstances of the prior outstanding or unsettled traffic violation notices or warrants for-

which, or on account of which, such vehicle was immobilized.

27–435(c) The owner of such immobilized vehicle, or other authorized person, shall be permitted to secure release of the vehicle upon:

(ia) the depositing of the collateral required for his appearance in the Circuit Court to answer for each violation; or

(ib) depositing the amount of the fine or penalty for each violation for which there is an outstanding or otherwise unsettled traffic violation notice or warrant; and

(ii) the payment of the fees as required by section (e) of this paragraph.

The owner of an immobilized vehicle, or other authorized person shall have the right to a post-immobilization hearing to determine the validity of such immobilization, towing, and any towing or storage charges. Such hearing must be requested within fifteen days after the vehicle is immobilized and shall be conducted by a hearing officer appointed to conduct such hearings. The post-immobilization hearing will not be determinative of or adjudicate any citation issued relative to any immobilized vehicle.

27–435(d) The immobilizing device or mechanism shall remain in place for forty-eight

nance violates the due process and equal protection clauses of the Fourteenth Amendment,[3] the Fourth Amendment [4] and the bill of attainder and ex post facto clauses of Article 1, § 10 [5] of the United States Constitution. Presently before the Court is the defendants' motion to dismiss all the claims under Fed.R.Civ.P. 12(b)(6) and to dismiss Grant for lack of standing [6] and plaintiffs' motion for partial summary judgment on their due process claim.[7] For the reasons set forth below, both parties' motions are granted in part and denied in part.

## I. *Facts*

The immobilization device used by the City is commonly referred to as a "boot" or "Denver boot." When the boot is attached to the wheel of a vehicle, the vehicle cannot be moved. The boot cannot be removed

without damaging the vehicle, except by a special mechanism controlled and owned by the City. The City of Chicago, through its sanitation department, has begun to place boots on vehicles which have ten or more outstanding tickets, under the authority of Paragraph 27–435 of the Municipal Code. To have the boot removed, the vehicle owner ("owner") must pay all fines for the outstanding traffic violations or post bond to secure his appearance in the Circuit Court to contest the violations. In either case, the owner must pay a boot fee of $35. If the owner does not contact the City to have the boot removed within forty-eight hours, the vehicle is towed. To obtain release of a vehicle after it has been towed, the owner must pay a towing fee of $45 as well as the boot fee and all fines for the traffic violations or a bond to secure an appearance to contest the violations. An

hours unless the owner has complied with section (c) of this section. If such compliance has not occurred within forty-eight hours, the vehicle shall be towed or impounded. If the immobilization occurs when a vehicle is parked in a rush-hour traffic zone or in any zone regulated by towing provisions, then such vehicle is subject to towing and impounding. Towing and storage fees, as specified in section 27–435(e) of this paragraph shall be paid, along with fees specified in section 27–435(c) of this paragraph before the owner of such vehicle, or authorized person, shall be permitted to repossess or secure the release of the vehicle.

27–435(e) The owner of an immobilized vehicle shall be subject to a fee of $35.00 for such immobilization. The owner of an immobilized vehicle which was impounded shall be subject to a total fee of $80.00 plus a fee for storage.

27–435(f) The Superintendent of Police, along with the Commissioner of the Department of Streets and Sanitation shall have authority for implementing the parking enforcement provisions of this paragraph.

27–435(g) Nothing in this paragraph shall be construed to deprive any person of the constitutional right to a hearing or trial as to the violations charged.

SECTION 2. This ordinance shall be in full force and effect from and after its passage.

3. The Fourteenth Amendment provides in pertinent part:

[N]or shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

4. The Fourth Amendment provides:

The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

5. Article I, Section 10 provides in pertinent part:

No State shall ... pass any Bill of Attainder, ex post facto Law, or Law impairing the Obligation of Contracts, or grant any Title of Nobility.

6. A complaint "should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Cruz v. Beto,* 405 U.S. 319, 322, 92 S.Ct. 1079, 1081, 31 L.Ed.2d 263 (1972); *Mui v. Dietz,* 559 F.Supp. 485, 487 (N.D.Ill.1983). In deciding a motion to dismiss, the court must accept as true all well pleaded material facts and make all reasonable inferences from these facts in the light most favorable to the plaintiff. *Mescall v. Burrus,* 603 F.2d 1266, 1269 (7th Cir. 1979).

7. The party moving for summary judgment has the burden of showing that there is no dispute as to any genuine issue of fact material to judgment in its favor as a matter of law. *Cedillo v. International Association of Bridge & Structural Iron Workers, Local No. 1,* 603 F.2d 7, 10 (7th Cir.1979).

owner is entitled to a post-immobilization hearing to determine the validity [8] of the booting. The hearing is available within two working days of the request for a hearing.

Plaintiff Barron found her car immobilized by the boot after she had received and failed to respond to 59 traffic tickets. Barron sues on behalf of all similarly situated plaintiffs who have had their vehicles booted. Plaintiff Grant has ten outstanding violations and is subject to having her car booted in the future. She sues on behalf of all plaintiffs who have ten outstanding violations and are therefore threatened with the immobilization of their vehicles by the boot.

## II. *Standing*

■ Defendants claim that Grant lacks standing to bring this action because she has failed to allege that her car has actually been immobilized by the boot. A plaintiff can only invoke federal court jurisdiction if he or she has suffered "some *threatened* or actual injury resulting from the putatively illegal action." *Linda R.S. v. Richard D.*, 410 U.S. 614, 617, 93 S.Ct. 1146, 1148, 35 L.Ed.2d 536 (1973) (emphasis added).

■. Grant has alleged a threatened injury. "For purposes of ruling on a motion to dismiss for want of standing, both the trial and reviewing courts must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party." *Warth v. Seldin*, 422 U.S. 490, 501, 95 S.Ct. 2197, 2206, 45 L.Ed.2d 343 (1975). Grant has ten outstanding violations issued by the City of Chicago and thus her car may be booted at any time. If the City ordinance is constitutionally infirm as alleged, she is subject to possible injury by its application to her. Defendants' motion to dismiss Grant for lack of standing is therefore denied.

## III. *Due Process*

■ The due process clause of the Fourteenth Amendment ensures that no

party will be deprived of property without notice and an opportunity to be heard at a meaningful time and in a meaningful manner. *Fuentes v. Shevin*, 407 U.S. 67, 80, 92 S.Ct. 1983, 1994, 32 L.Ed.2d 556 (1971); *Armstrong v. Manzo*, 380 U.S. 545, 552, 85 S.Ct. 1187, 1191, 14 L.Ed.2d 62 (1965). The Fourteenth Amendment protection of property has been broadly extended to "any significant property interest." *Boddie v. Connecticut*, 401 U.S. 371, 379, 91 S.Ct. 780, 786, 28 L.Ed.2d 113 (1971). It is undisputed that the uninterrupted use of one's vehicle is a substantial property interest, and that before the "local government may so interrupt its use, the owner is entitled to due process." *Graff v. Nicholl*, 370 F.Supp. 974, 981 (N.D.Ill.1974); *see also Bell v. Burson*, 402 U.S. 535, 539, 91 S.Ct. 1586, 1589, 29 L.Ed.2d 90 (1971); *Sutton v. City of Milwaukee*, 672 F.2d 644, 645 (7th Cir.1982).

■ The issue before the Court is whether the procedure currently followed by the City when it boots a vehicle satisfies the basic due process requirements. What is due process varies from case to case. "Due process is an amorphous concept of less than facile application. There are no rigid or universal rules determining what constitutes procedural due process. Indeed, the dictates of that flexible concept vary substantially depending upon the nature of the proceedings." *Duby v. American College of Surgeons*, 468 F.2d 364, 368 (7th Cir.1972) (citations omitted). Therefore, although it is necessary to afford some process to a person whose vehicle is booted, there is no specific process which must be followed.

## A. *Pre-deprivation hearing*

Plaintiffs allege that due process requires a hearing before deprivation of property absent "extraordinary circumstances." *Boddie v. Connecitcut*, 401 U.S. at 378–379, 91 S.Ct. at 786. However, the test commonly used today to determine what process is necessary, first stated in *Mathews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893,

---

**8.** A computer list of all vehicles that have ten or more outstanding violations has been prepared. A booting is invalid if there are not ten outstanding violations against the owner, even if the computer printout erroneously lists the owner.

47 L.Ed.2d 18 (1976), does not center on the existence of extraordinary circumstances. The Supreme Court, in concluding that no pre-deprivation hearing was required in *Mathews*, considered three factors for determining whether due process had been afforded. These three factors are:

First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Id.*, 424 U.S. at 334–335, 96 S.Ct. at 903. The Seventh Circuit, in applying this test, has concluded that a pre-deprivation hearing is not required in every case, even absent extraordinary circumstances. *Brown v. Brienen*, 722 F.2d 360, 365 (7th Cir.1983); *Sutton v. City of Milwaukee*, 672 F.2d 644, 646 (7th Cir.1982).

The first factor we consider herein is the private interest affected. When a vehicle is booted, the owner loses the use of the vehicle and the boot fee. Although the loss of the use of the vehicle is temporary, the loss is not insubstantial. For some an automobile is a virtual necessity for day-to-day living. *Bell v. Burson*, 402 U.S. at 539, 91 S.Ct. at 1589; *Graff v. Nicholl*, 370 F.Supp. at 981 (N.D.Ill.1974). Nonetheless, it has been held constitutionally permissible to cut off much more substantial interests, such as disability benefits, *Mathews*, and the custody of one's children, *Lossman v. Pekarske*, 707 F.2d 288 (7th Cir.1983), without a pre-deprivation hearing so long as a prompt post-deprivation hearing is available. Other courts specifically have held it permissible to immobilize a car without a pre-deprivation hearing. *Sutton v. City of Milwaukee* (towing); *Gillam v. Landrieu*, 455 F.Supp. 1030, 1042 (E.D.La.1978) (booting).

The second factor we examine is the risk of an erroneous deprivation and the probable value of any additional safeguard. The risk of an erroneous deprivation is small. A vehicle is placed on a boot list when it has ten outstanding violations. The process is objective and systematic. There is little risk of an error in judgment by anyone empowered to place boots on vehicles. It is possible that some errors might be avoided if a pre-deprivation hearing were available. But because errors [9] should be quite infrequent and capable of correction at a prompt post-deprivation hearing, the probable value of a pre-deprivation hearing is relatively low.

The final factor we consider is the government's interest and the burden involved in implementing the additional safeguard. The government has a strong interest in enforcing traffic ordinances for the safety and convenience of the public. The enforcement is impossible if vehicle owners can repeatedly ignore with impunity the sanctions imposed for violation of the ordinances. The boot provides an effective, and possibly the only feasible, means of forcing repeat violators to pay for or contest the tickets they have received. "Because vehicles are, by their nature, movable, and because the violators subject to the immobilization procedure have a history of failing to respond to summonses the 'boot' has proved a practical method of insuring a violator's presence before the proper authorities and the disposition of overdue summonses." *Patterson v. Cronin*, 650 P.2d 531, 538 (Colo.1982).

The person whose car is booted will be deterred from accumulating and neglecting to pay significant numbers of tickets in the future. The use of the boot also serves as a strong general deterrent. It is reasonable to assume that other vehicle owners will be deterred from ignoring their tickets.

A pre-immobilization hearing would be a costly administrative burden. It is unlikely

---

**9.** A vehicle may be wrongfully booted only if the owner has already paid the violations or if the tickets were actually issued against a previous owner, if there is a computer error that attributes ten violations to someone who actually has not received ten violations or if a city sanitation worker mistakenly boots a vehicle not on the computer list.

that upon notice the owner would respond by presenting himself to the proper authorities when in the past he has ignored such requests. Moreover, if the owner is advised that his vehicle may be immobilized after it has already been located on the street, he will be able to move it to a new location and avoid the boot. Thus, pre-immobilization notice may very well render the effect of the booting procedure useless. The burden of notifying and affording a hearing to all those who may have their vehicle booted in the future is magnified in light of the fact that they have all been given notice and a chance to be heard on at least ten previous occasions.

### B. Post-deprivation hearing

■ Although a pre-deprivation hearing may not be required, a prompt post-deprivation hearing must be available for due process to be satisfied. *Parratt v. Taylor*, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981); *Mitchell v. W.T. Grant Co.*, 416 U.S. 600, 94 S.Ct. 1895, 40 L.Ed.2d 406 (1974). It is not necessary that the hearing be a formal adversarial process. *Dixon v.*

*Love*, 431 U.S. 105, 117, 97 S.Ct. 1723, 1729, 52 L.Ed.2d 172 (1977). The basic requirements of due process—notice, an opportunity to be heard at a meaningful time and a fair and impartial process—must be satisfied.

■ If an owner is to have an opportunity to contest the validity of the booting, notice of the right to a hearing must be given. This notice must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950). Paragraph 27–435 provides that notice is first given to the owner through a sign placed on the vehicle at the time it is booted.[10] Notice is also given on the back of the receipt if the owner pays for the immediate release of his vehicle.[11] Finally, notice is again provided by signs posted near the desk where the owner must go to pay the fines for release of his vehicle or to make inquiries about the booting.[12] These notice procedures are suffi-

---

**10.** The sign reads:

WARNING!

DO NOT MOVE THIS VEHICLE

Attempts to operate this vehicle while the immobilizing device is attached may result in serious damage to the vehicle or serious bodily injury to the person attempting to operate the vehicle.

This vehicle has been immobilized by the City of Chicago for violations of the Municipal Code (10 or more outstanding traffic violation notices).

To secure release of this vehicle, payment must be made for all outstanding traffic violations, traffic warrants and the immobilization or impoundment fee.

Arraignments for release of this vehicle may be made by calling the:

1. Traffic Violation Bureau, 321 North LaSalle Street, Room 103, Telephone 822–3600 between 9:00 A.M. and 4:00 P.M., Monday through Friday.

2. Chicago Police Department, Telephone 744–5467 at all other hours and on Saturdays, Sundays and Holidays.

Attention, vehicle owner: You are hereby advised of your right to request a prompt hearing to determine the validity of the tow and any related fees. Detailed information relative to obtaining such a hearing is provided on the reverse side of the immobilization fee receipt.

Chicago Police Department

**11.** The back of the receipt reads:

Attention, Vehicle Owner:

You are hereby advised of your right to request a hearing within a period of 15 days to determine the validity of immobilization and/or towing fees.

If you desire a hearing, telephone or write the Department of Law, Traffic Enforcement Division, 321 North LaSalle Street, Room 226, Chicago, 60610, 744–4883.

**12.** The signs posted by the desk state:

NOTICE OF A RIGHT TO A POST IMMOBILIZATION HEARING

The registered or legal owner of a vehicle immobilized by agents of the City of Chicago is entitled to a Post Immobilization Hearing to determine the validity of such immobilization, towing, and any immobilization, towing or storage charges. (Examples of invalidly immobilized vehicles are vehicles immobilized after restitution for outstanding warrants, or vehicles immobilized for warrants on a previous owner.)

If you desire a hearing and seek immediate release of your automobile, you must:

1) deposit collateral required for your appearance in the Circuit Court to answer for each violation; or

cient to apprise the owner of the availability of a hearing.

 The hearing must be available promptly so that an erroneously held vehicle can be released before the owner incurs substantial harm. *Stypmann v. City and County of San Francisco*, 557 F.2d 1338, 1344 (9th Cir.1977). The instant procedure provides for immediate release of a vehicle only if the owner pays all the traffic fines or a bond. If the owner is unwilling or unable to make payment, the City will hold his vehicle. In either case, a hearing to determine the validity of the booting is available within two working days of a request for such.[13] Therefore, we find that the current procedure provides an opportunity to be heard within a reasonable time period.[14]

 The hearing must also be fair and impartial. The owner must be afforded an opportunity to present a defense. *See American Surety Co. v. Baldwin*, 287 U.S. 156, 168, 53 S.Ct. 98, 102, 77 L.Ed. 231 (1932). Plaintiffs claim that due process is violated if the hearing does not provide a forum for deciding the validity of each and every ticket. However, the validity of the booting is based solely on the existence of ten or more outstanding traffic citations, regardless of the merits of each citation. The owner already had an opportunity to contest each ticket, and he may obtain a future court date for each one if he desires. The only defense available to the owner at

the post-immobilization hearing is that he in fact does not have ten outstanding violations. He must be given a chance to present this defense only.

 Due process requires that the hearing officer be impartial. *Arnett v. Kennedy*, 416 U.S. 134, 197, 94 S.Ct. 1633, 1665, 40 L.Ed.2d 15 (1974). Plaintiffs allege that the Assistant Corporation Counsel and the Clerk of the Cook County Circuit Court cannot properly serve as hearing officers because they are necessarily biased in favor of the City. It has been held that a chief of police cannot fairly determine the validity of a tow, *Hale v. Tyree*, 491 F.Supp. 622, 626 (E.D.Tenn.1979), and that a mayor of a town cannot serve as a judge in the town traffic court. *Ward v. Village of Monroeville*, 409 U.S. 57, 93 S.Ct. 80, 34 L.Ed.2d 267 (1972). In both *Hale* and *Ward* it was determined that the person serving as hearing officer had a substantial interest in the matter before him which impaired his impartiality.

 The impartiality of the Assistant Corporation Counsel is similarly impaired. The Corporation Counsel represents the City's interests in all actions involving the City or its employees. Municipal Code of Chicago, ch. 6–2 (1983). Thus, it is the Assistant Corporation Counsel who prosecutes alleged violators of parking laws and who defends any City employee accused of improperly booting a vehicle. Given these duties, the Assistant Corporation Counsel

---

2) deposit the amount of the fine or penalty for each violation for which there is an outstanding or otherwise unsettled traffic violation or warrant; and

3) pay fees required for immobilization, towing, and storage; and

4) make your request within fifteen days after the vehicle was immobilized.

If you desire a hearing without the immediate release of your vehicle, your vehicle will remain in the custody of the City of Chicago until such hearing is completed. The request must be made within fifteen days after the vehicle was immobilized.

In all cases, hearings will be scheduled within two working days of the receipt of a request for such hearing.

TO OBTAIN YOUR HEARING you must contact the Department of Law, Traffic Enforcement Division by:
Telephone: 744–4883

Mail: Department of Law
Traffic Enforcement Division
321 North LaSalle Street, Room 226
Chicago, Illinois 60610

13. The administrative scheduling of the hearing is best left to the City in the first instance. *Fuentes v. Shevin*, 407 U.S. at 96–97, 92 S.Ct. at 2002.

14. This Court must decide if the current procedure is constitutional. It is not our role to require the City to use the best possible procedure. We note that when the City tows a vehicle (in a non-booting situation), a hearing is available within 24 hours, excluding weekends and holidays. Although this practice is more favorable to vehicle owners than the two day limitation in the booting ordinance, a 48 hour wait for a hearing is not constitutionally impermissible.

is not sufficiently detached to serve as the hearing officer in the post-immobilization hearing.[15]

■ The Clerk of the Court stands in a different position. The Clerk's duties allow him to remain neutral towards the City, and plaintiffs suggest no other reason why the Clerk could not be impartial in a post-immobilization hearing. Thus, an owner's due process rights will not be violated if the Clerk of the Court conducts the hearing.

■ We conclude, therefore, that due process does not require a pre-deprivation hearing. Moreover, the only constitutional infirmity in the current post-deprivation hearing procedure is the use of the Assistant Corporation Counsel as hearing officer. Accordingly, defendants' motion to dismiss the due process claim is granted in all respects except as it relates to the Assistant Corporation Counsel's role in the hearing. Similarly, plaintiffs' motion for partial summary judgment is granted concerning this issue only and is otherwise denied. Paragraph 27–435 does not expressly state that the Assistant Corporation Counsel—or any other particular person—shall serve as the officer at the post-deprivation hearing. The ordinance therefore is not unconstitutional on its face, but only as it has been applied. Plaintiffs are entitled to limited injunctive relief: the City shall be enjoined from using the Assistant Corporation Counsel as hearing officer and shall be required promptly to afford plaintiff Barron a new hearing which complies with the due process requirements discussed above.[16] Plaintiffs' requests for broader injunctive relief are denied.

## IV. Equal Protection

■ When governmental legislation relates to matters of social or economic welfare, the law need only bear a rational relationship to a legitimate governmental purpose to withstand equal protection challenges. However, the judiciary gives strict scrutiny to legislative classifications that may interfere with the exercise of a fundamental right or adversely affect a suspect group. *Massachusetts Board of Retirement v. Murgia,* 427 U.S. 307, 96 S.Ct. 2562, 49 L.Ed.2d 520 (1976).

■ Plaintiffs allege that the booting ordinance violates the equal protection clause because it adversely affects indigents, less able to pay the boot fee than others. However, the Supreme Court has held that indigents are not a suspect class. *Schweiker v. Wilson,* 450 U.S. 221, 101 S.Ct. 1074, 67 L.Ed.2d 186 (1981); *United States v. Kras,* 409 U.S. 434, 93 S.Ct. 631, 34 L.Ed.2d 626 (1973). Because no suspect class is involved, the strict scrutiny test should be applied only if a fundamental right is affected by the ordinance.

■ A fundamental right has a constitutionally cognizable basis that must be protected by close judicial scrutiny. Plaintiffs contend that driving a car is a fundamental right. Access to the complete criminal process [17] and the rights to vote [18] and to run for office [19] all have been held to be fundamental rights. However, the rights to welfare benefits,[20] public housing [21] and

---

15. Defendants argue that two separate divisions of the Office of the Corporation Counsel are charged with enforcing the booting ordinance and with defending employees who may have taken part in an invalid booting. This administrative separation is not enough to free the Assistant Corporation Counsel from possible bias.

16. In the complaint, Barron makes various allegations which suggest that the City merely feigned a legitimate hearing in her case. If the City does not strictly adhere to its own procedures and Barron's new hearing is no more than a sham, she, of course, has the option of filing an additional *individual* (but not class) complaint of due process violations.

17. *Mayer v. Chicago,* 404 U.S. 189, 92 S.Ct. 410, 30 L.Ed.2d 372 (1971); *Douglas v. California,* 372 U.S. 353, 83 S.Ct. 814, 9 L.Ed.2d 811 (1963).

18. *Harper v. Virginia Bd. of Elections,* 383 U.S. 663, 86 S.Ct. 1079, 16 L.Ed.2d 169 (1966).

19. *Lubin v. Panish,* 415 U.S. 709, 94 S.Ct. 1315, 39 L.Ed.2d 702 (1974); *Bullock v. Carter,* 405 U.S. 134, 92 S.Ct. 849, 31 L.Ed.2d 92 (1972).

20. *Schweiker v. Wilson,* 450 U.S. 221, 101 S.Ct. 1074, 67 L.Ed.2d 186 (1981); *Jefferson v. Hackney,* 406 U.S. 535, 91 S.Ct. 1724, 32 L.Ed.2d 285 (1972).

21. *James v. Valtierra,* 402 U.S. 137, 91 S.Ct. 1331, 28 L.Ed.2d 678 (1971).

equal educational opportunities [22] are not fundamental. Like this latter group of rights, the right to drive a car may be important, but it is not constitutionally recognized and is not fundamental.

 Since there is no suspect class or fundamental right involved, the rational relationship test applies in this case. Under this test, a law is upheld unless it is arbitrary and bears no rational relationship to a legitimate government interest. *Frontiero v. Richardson*, 411 U.S. 677, 683, 93 S.Ct. 1764, 1768, 36 L.Ed.2d 583 (1973). The legitimate government interest here is keeping the streets free from congestion and safe for the general public. *Sutton v. City of Milwaukee*, 672 F.2d at 646; *Gillam v. Landrieu*, 455 F.Supp. 1030, 1042 (E.D.La.1978). The City enacts traffic ordinances which serve this purpose. As discussed earlier, the boot is a highly efficient means of enforcing these ordinances. The ordinance providing for the immobilization of vehicles is therefore directly and rationally related to a legitimate government interest. Because the rational relationship test is satisfied, the motion to dismiss the equal protection claim is granted.

### V. *Fourth Amendment*

 Plaintiffs allege that the immobilization of a vehicle is an improper seizure prohibited by the Fourth Amendment. The goals of the Fourth Amendment include the protection of privacy against arbitrary invasion and the prevention of introduction of evidence seized without probable cause in court, usually in a criminal prosecution. *United States v. Ortiz*, 422 U.S. 891, 95 S.Ct. 2585, 45 L.Ed.2d 623 (1975); *Chimel v. California*, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969); *Berger v. State of New York*, 388 U.S. 41, 87 S.Ct. 1873, 18 L.Ed.2d 1040 (1967). The use of

the boot does not interfere with these goals. The vehicle is simply immobilized, neither entered nor searched. Although the owner may be inconvenienced by the booting, his privacy has not been invaded. The vehicle is not seized as evidence. Nor will the act of booting a vehicle produce evidence concerning past violations.[23] Finally, the Fourth Amendment protects only against *unreasonable* searches and seizures. *United States v. Rabinowitz*, 339 U.S. 56, 65–66, 70 S.Ct. 430, 435, 94 L.Ed. 653 (1950). Even if booting were viewed as a seizure, it is not an unreasonable one. *Cf. South Dakota v. Opperman*, 428 U.S. 364, 368–69, 96 S.Ct. 3092, 3097, 49 L.Ed.2d 1000 (1976) (police inventory of car interior not an unreasonable search).

For these reasons, the motion to dismiss the Fourth Amendment claim is granted.

### VI. *Bill of Attainder and Ex Post Facto*

 Plaintiffs claim that the ordinance violates Article 1, § 10 of the United States Constitution because it is both an ex post facto law and a bill of attainder. An ex post facto law makes criminal an action that was innocent when done and then punishes that action or attaches a greater punishment to a crime than was attached when the crime was committed. *Gibson v. Mississippi*, 162 U.S. 565, 16 S.Ct. 904, 40 L.Ed. 1075 (1896). A bill of attainder imposes punishment upon an easily identifiable group or an individual without judicial trial. *Cummings v. Missouri*, 71 U.S. 277, 287, 4 Wall. 277, 18 L.Ed. 356 (1866).

 The Article 1, § 10 prohibition relates to *punishment* only. *United States Trust Co. of New York v. New Jersey*, 431 U.S. 1, 17 n. 13, 97 S.Ct. 1505, 1515 n. 13, 52 L.Ed.2d 92 (1977). The pur-

---

**22.** *San Antonio Independent School District v. Rodriguez*, 411 U.S. 1, 93 S.Ct. 1278, 36 L.Ed.2d 16 (1973).

**23.** Plaintiffs allege that the booting is evidence of driving on a suspended license, a misdemeanor. They claim that because a person may have his license suspended when he has ten outstanding violations, being booted (also based on ten outstanding violations) produces evidence of

driving on a suspended license. The connection plaintiffs attempt to make is highly tenuous. A vehicle is necessarily parked when it is booted, so it is difficult to see how this produces evidence of *driving* on a suspended license, a moving violation. Moreover, it could just as reasonably be contended by the owner that someone other than the owner drove and parked the vehicle.

**1452**

poses of the booting ordinance are non-punitive. The City is not attempting to punish owners for having ten outstanding tickets but is merely trying to get them to respond to those tickets. No additional fine is incurred as a result of having ten tickets; the owner pays the same amount for the past tickets as he would have paid if his vehicle had not been booted. The $35 boot fee is compensatory in nature. It covers the costs of implementing the booting system and is not a punishment for incurring ten tickets. *See Federal Election Commission v. Lance,* 617 F.2d 365, 370 (5th Cir.1980), *cert. denied,* 453 U.S. 917, 101 S.Ct. 3151, 69 L.Ed.2d 999 (1981); *United Nuclear Corp. v. Cannon,* 553 F.Supp. 1220, 1227 (D.R.I.1982).

 Nonetheless, a retroactive law that does not impose punishment may be unconstitutional under the due process clause—but only if the results are so wholly unexpected and disruptive that "harsh and oppressive" consequences follow. *United States Trust Co. of New York v. New Jersey,* 431 U.S. at 17 n. 13, 97 S.Ct. at 1515 n. 13. The ordinance is not so unique and uncommon that it can be characterized as wholly unexpected and disruptive. As discussed earlier, the inconvenience of the immobilization can be promptly alleviated by posting a bond, and complete payment of all fines at one time is not required.

For these reasons, plaintiffs have not stated a claim under the ex post facto clause or bill of attainder clause. Nor does the retroactive effect of the ordinance violate due process. Defendants' motion to dismiss these claims is also granted.

---

Accordingly, the defendants' motion to dismiss is granted in part and denied in part, and plaintiffs' motion for summary judgment on the due process claim is denied in part and granted in part.[24] It is so ordered.

**24.** Plaintiffs also seek attorneys' fees and costs. This request should be filed in the form of a motion (with appropriate affidavits) and supporting brief on or before October 12, 1984.

Defendants may respond by October 22, 1984, and plaintiffs may reply by October 29, 1984. It is so ordered.