**John GROSS, Plaintiff,**

v.

**Brandon CARTER, Dennis Spradlin, An officer of the Bentonville Police Department and Terry Coberly, Mayor of the City of Bentonville, each in his or her official and individual capacities, Defendants.**

**No. CIV.02–5182.**

United States District Court,
W.D. Arkansas,
Fayetteville Division.

May 22, 2003.

N. Doug Norwood, Susan T. Lusby, Norwood & Norwood, P.A., Rogers, AR, for plaintiff.

Camille S. Thompson, Staff Attorney, Bentonville, AR, Nga Ostoja–Starzewski, Attorney at Law, North Little Rock, AR, Patricia J. Hays, Attorney at Law, Little Rock, AR, for defendants.

### *MEMORANDUM OPINION AND JUDGMENT*

HENDREN, Chief Judge.

NOW on this 22 day of May 2003, comes on for consideration the parties' cross-motions for summary judgment (documents # 18 & # 23) and the various responses and replies thereto, and the Court, being well and sufficiently advised, finds and orders as follows:

1. Plaintiff, John Gross, a Bentonville, Arkansas attorney, filed his First Amend-ed Complaint for Violation of Civil Rights Act, pursuant to 42 U.S.C. § 1983, on September 24, 2002, naming as defendants City of Bentonville Mayor Terry Coberly, Bentonville Police Lt. Dennis Spradlin and former City of Bentonville parking employee, Brandon Carter.

Plaintiff contends that his constitutionally protected rights were violated on February 20, 2002, when a "wheel boot" was placed upon and immobilized his vehicle while parked on the Bentonville Square. He says the wheel boot was placed on his vehicle by Brandon Carter, acting at the direction of Bentonville Police Officer, Lt. Spradlin, and pursuant to ordinances and policies employed by Bentonville Mayor Terry Coberly. Admitting in his amended complaint that the placement of the wheel boot on his vehicle was precipitated by his receipt of numerous parking tickets which had not been paid or appealed, plaintiff contends that the Bentonville ordinance authorizing use of the wheel boot is unconstitutional—on its face and as applied—and that immobilizing vehicles with the wheel boot constitutes a seizure of personal property without sufficient due process. Plaintiff seeks a declaration from this Court that the ordinance is unconstitutional as well as an award of compensatory damages, costs and attorney's fees; on these claims. He has demanded a trial by jury on his claims for damages, costs and attorneys' fees.

2. Defendants have denied the allegations contained in Gross' amended complaint and the matter is currently set for a jury trial during the week of June 16, 2003.

3. All parties have now moved for summary judgment in their respective favors and each has evidenced familiarity with the standard to be applied to the motions. Rule 56 of the Federal Rules of Civil Procedure and provides for the entry of summary judgment on a claim

if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

F.R.Civ.P. 56(c); *see also Carroll v. Pfeffer,* 262 F.3d 847 (8th Cir.2001); *Barge v. Anheuser–Busch, Inc.,* 87 F.3d 256 (8th Cir.1996). Summary judgment is to be granted only where the evidence is such that no reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Accordingly, all evidence must be viewed in the light "most favorable to the non-moving party." *F.D.I.C. v. Bell,* 106 F.3d 258, 263 (8th Cir.1997); *see also Bailey v. United States Postal Service,* 208 F.3d 652, 654 (8th Cir.2000).

Where a movant makes and properly supports a motion for summary judgment, the opposing party may not rest upon the allegations or denials of its pleadings; rather, the non-movant must "set forth specific facts showing that there is a genuine issue for trial." *Liberty Lobby,* 477 U.S. at 256, 106 S.Ct. 2505. The non-moving party must "make a sufficient showing on every essential element of its case for which it has the burden of proof at trial." *Wilson v. Southwestern Bell Tel. Co.,* 55 F.3d 399, 405 (8th Cir.1995).

4. A review of the parties' submissions reveals that the following material facts exist without substantial dispute:

* On June 13, 2000, the Bentonville City Council enacted Ordinance No.2000–95, which created a Parking Management Commission ("Commission") pursuant to Ark.Code Ann. § 12–9–108. The ordinance, *inter alia,* empowered the Commission to preside over administrative appeal hearings for violations of parking regulations. At the same time, the Bentonville City Council also passed Ordinance No.2000–96 which established a two-hour parking area and provided various penalties for parking violations.

* The two-hour parking areas are demarcated by City of Bentonville signs.

* The City Council later passed Ordinance No.2001–140 which imposed new sanctions for parking violations. This Ordinance specifically provides that parking citations for violations in a two-hour parking zone incur a $15 fine and that any vehicle incurring $45 in unpaid fines (equivalent to three (3) tickets) would be subject to having a wheel boot placed on the vehicle. The Ordinance also provides that all unpaid fines, as well as a $25 wheel boot removal fee, would have to be paid in full prior to removal of the wheel boot from the offending vehicle.

* Ordinance No.2001–140 further provides an appeal procedure for parking ticket violations. Within five (5) calendar days of receiving a citation for a parking violation, the violator may submit a written request for an administrative/appeal review before the Parking Management Commission. The appeal request is to be filed at the Bentonville Police Department.

* When a parking ticket is issued, it is placed on the violator's windshield; the ticket itself states how to appeal the ticket and provides notice that three (3) unpaid tickets can result in the vehicle being disabled with a wheel boot. The language on the City of Bentonville's parking tickets is uniform and provides as follows:

To Appeal This Ticket:

Please obtain a ticket appeal form at the Bentonville Police Department and complete it within 5 days of the date of this ticket. The appeal form must be received by the Bentonville Police Department within 5 days of the ticket date.

Three unpaid tickets can result in your vehicle being disabled with a wheel boot and an additional $25.00 fee.

\* The Parking Commission meets monthly to consider appeals and it notifies parties in writing of its decision. If the Commission denies an appeal, a party may appeal to district (state) court.

\* The City of Bentonville's Parking Monitor at the relevant time was Brandon Carter. It was Carter's job to monitor parking on the Bentonville Square by marking vehicle tires with chalk and re-monitoring vehicles every two hours to check those marks. If a vehicle was observed parked in two-hour parking for more than two hours, Carter wrote a ticket and placed it on the windshield of the vehicle.

\* While making his rounds on February 20, 2002, Carter discovered plaintiff's vehicle over-parked in a two-hour space, Carter checked a computerized list of repeat violators and determined that plaintiff had four (4) unpaid parking tickets. Carter radioed Lt. Dennis Spradlin and informed Spradlin that a vehicle was subject to the wheel boot. Carter then pulled plaintiff's four (4) paper tickets to verify the accuracy of the computer generated list and ran a license plate check to confirm the vehicle's owner. Carter then checked the appeal file to verify that plaintiff had no appeals pending. After completing these verifications but prior to the wheel boot being placed on plaintiff's vehicle, Carter took his paperwork to Lt. Spradlin. Lt. Spradlin then directed that the wheel boot be employed on plaintiff's vehicle. (Although irrelevant to its decision, the Court notes that Carter is no longer employed by the City of Bentonville for reasons unknown).

\* A wheel boot is large, clamp like device applied to a wheel of a vehicle which generally immobilizes the vehicle.

\* Plaintiff is an attorney whose office is located near the "Square" in downtown Bentonville, Arkansas. Prior to the seizure at issue, plaintiff admits receiving several tickets for violation of the two-hour parking ordinances. He also admits that, as of February 20, 2002, he had neither paid nor appealed parking tickets issued to him on January 10, 2002, January 17, 2002, February 12, 2002 and February 14, 2002. Plaintiff admits that each of those four (4) tickets informed him of the procedure for appealing the ticket. He further acknowledges that he was aware, prior to February 20, 2002, that three (3) unpaid parking tickets subjected one's vehicle to the wheel boot and thus, it was his personal practice to try to pay enough of his parking tickets to keep the total number of unpaid parking tickets to less than three (3).

\* The City of Bentonville has voluntarily suspended enforcement of the booting Ordinance until resolution of this action.

5. The specific ordinance called into question by plaintiff's first amended complaint is Bentonville City Ordinance 2001–140 which provides as follows:

AN ORDINANCE AMENDING SECTION 8.24.25 OF THE BENTONVILLE MUNICIPAL CODE DEALING WITH PENALTIES FOR PARKING VIOLATIONS AND DECLARING AN EMERGENCY

WHEREAS, section 8.24.25 of the Bentonville City Code provides that single traffic violations will result in a fine of $5.00; and

WHEREAS, the same code section provides for a penalty fee of $20.00 on all parking tickets not paid within 15 days after issuance thereof; and

WHEREAS, the same code section provides for the towing of any vehicle which accumulates $75.00 in unpaid parking tickets and also for the issuance

of a warrant for the arrest of the owner of such vehicle; and

WHEREAS, the aforementioned penalties are insufficient to encourage compliance with city parking regulations, and are otherwise outdates and ineffective;

NOW, THEREFORE, BE IT ORDAINED BY THE CITY COUNCIL FOR THE CITY OF BENTONVILLE, ARKANSAS:

Section 1: That Article II of Ordinance No.2000–96, as codified at Section 8.24.25 of Bentonville Municipal Code, dealing with penalties for parking violations is hereby repealed and amended to read as follows:

1. That any person found violating any two-hour parking zones established by Ordinance No.2000–96 may be issued a parking violation citation and upon issuance of such a citation shall be subject to pay a $15.00 fine.

2. That any vehicle incurring $45.00 in unpaid fines shall be subject to having a parking boot placed on the vehicle. All unpaid fines, in addition to a $25.00 boot removal fee, must be paid in full prior to the removal of such parking boot from the offending vehicle.

3. All fines shall be paid at the City of Bentonville Police Department.

Section 2: That paragraphs 1 and 2 of Article VI of Ordinance No.2000–96, dealing with appeals should be and is hereby amended to read as follows:

1. Within five calendar days of receiving a citation for a parking violation, the violator may submit a written request for an administrative/appeal review before the Parking Management Commission. The violator shall file such request at the Bentonville Police Department.

2. The Parking Commission shall meet on a monthly basis to consider appeals and shall advise the violator, in writing, as to the result of the appeal.

Section 3: That Article V of Ordinance No.2000–96, dealing with the issuance of arrest warrants for parking violations, should be, and is hereby repealed in its entirety.

Section 4: That this Ordinance is necessary to preserve the public peace, health, safety and welfare, and because of such, an emergency is declared to exist, and this Ordinance shall be in full force and effect from the date of its passage and approval.

PASSED and APPROVED this 9th day of October 2001.

APPROVED:

/s/

MAYOR Terry Coberly

6. The pleadings indicate that plaintiff is essentially challenging the constitutionality of Bentonville City Ordinance 2001–140 on due process grounds. He contends:

* that the Ordinance fails to provide the violator with either pre-deprivation or post-deprivation due process with respect to employment of the wheel boot;

* that the wording of the Ordinance's phrase—"shall be subject to having a parking boot placed on the vehicle"—is vague and ambiguous and does not give clear notice to a potential violator of the consequences of incurring three (3) unpaid and un-appealed parking tickets;

* that the Ordinance permits immobilization and/or seizure of personal property without a warrant; and

* that the Ordinance was applied in an unconstitutional manner when the boot was placed on his vehicle on February 20, 2002.

7. The Court's analysis of plaintiff's claims of violation of constitutionally pro-

tected rights begins with the issue of whether a constitutionally protected rights is, in fact, involved. In this instance, the question is whether placement of a wheel boot on a person's vehicle involves deprivation of a constitutionally protected property right.

■ Although it has long been recognized that duration limitations on public parking fall within the ambit of a city's police powers[1], a number of courts have also recognized that temporary seizure or immobilization of one's vehicle for violation of parking ordinances interferes with a property interest, thus entitling one to the protections of due process. *Saukstelis v. City of Chicago,* 932 F.2d 1171, 1172 (7th Cir.1991); *Sutton v. City of Milwaukee,* 672 F.2d 644, 645 (7th Cir.1982); *see also Grant v. City of Chicago,* 594 F.Supp. 1441, 1447 (N.D.Ill.1984). This recognition is premised upon the United States Supreme Court's holding that even temporary, non-final deprivations of property are deprivations within the contemplation of the Fourteenth Amendment. *Sniadach v. Family Finance Corp.,* 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969) (suspension of licenses); *Bell v. Burson,* 402 U.S. 535, 91 S.Ct. 1586, 29 L.Ed.2d 90 (1971) (same). As stated by an Illinois district judge, even where "loss of the use of the vehicle is temporary, the loss is not insubstantial." *Grant v. City of Chicago,* 594 F.Supp. 1441, 1447 (N.D.Ill.1984). Accordingly, the Court concludes that the placement of the wheel boot on a person's vehicle does affect a constitutionally protected property right.

8. The Court next turns to an examination of whether placement of the wheel boot on a vehicle pursuant to the City's ordinance here involved accords with the requirements of due process of law.

■ The core of due process is the right to (a) notice, (b) a meaningful opportunity to be heard, and (c) a fair and impartial process which is appropriate to the nature of the case. *LaChance v. Erickson,* 522 U.S. 262, 266, 118 S.Ct. 753, 139 L.Ed.2d 695 (1998); *Armstrong v. Manzo,* 380 U.S. 545, 85 S.Ct. 1187, 14 L.Ed.2d 62 (1965). The goal of the due process is to minimize substantially unfair or mistaken deprivations of property. *Fuentes v. Shevin,* 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972). However, "[d]ue process, the Supreme Court has repeatedly written, is a flexible concept that varies with the particular situation." *Doherty v. City of Chicago,* 75 F.3d 318, 323 (7th Cir.1996); *Morrissey v. Brewer,* 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972). As pre-deprivation process is not always feasible, the Supreme Court has held that prompt post-deprivation remedies may provide all the process that is due. *Parratt v. Taylor,* 451 U.S. 527, 540–41, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981); *Mathews v. Eldridge,* 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976); *Mitchell v. W.T. Grant Co.,* 416 U.S. 600, 94 S.Ct. 1895, 40 L.Ed.2d 406 (1974). This approach is sound as "[t]he constitutional violation under § 1983 is not complete when the deprivation occurs; [there is not violation] unless and until the State fails to provide due process." *Zinermon v. Burch,* 494 U.S. 113, 126, 110 S.Ct. 975, 108 L.Ed.2d 100 (1990). The Court will discuss these core concerns in the context of the facts of this case.

■ (a) *Notice*—First, the Court notes that, under this analysis, the City of Bentonville is required to provide "notice reasonably calculated, under all circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objec-

---

1. *Pugh v. City of Des Moines,* 176 Iowa 593, 156 N.W. 892 (1916).

tions." *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950); *see also Mennonite Board of Missions v. Adams,* 462 U.S. 791, 103 S.Ct. 2706, 77 L.Ed.2d 180 (1983) (notice is minimum constitutional precondition to a proceeding which will adversely affect property interest). The evidence before the Court shows that, in this case, the only notice of adverse action is the parking ticket itself. A fair reading of the ticket's language—quoted above—shows that it gives notice of the following:

* that one may appeal the ticket, itself, and how to do so;

* that three unpaid tickets can result in the vehicle being disabled with a wheel boot; and

* that if the vehicle is disabled with a wheel boot, an additional $25.00 fee will be imposed.

The Court believes that Bentonville's practice of affixing parking tickets to illegally parked vehicles which are left unattended is reasonably certain to provide notice of the parking violation. *See Mullane,* 339 U.S. at 315, 70 S.Ct. 652; *see also Patterson v. Cronin,* 650 P.2d 531, 535 (Colo.1982). The Court notes that the undisputed facts in this case support such a conclusion as plaintiff admits having receiving tickets for each parking violation with which he has been charged by the City of Bentonville. While the Court can conceive of situations where the tickets might not always be received due to various and sundry outside forces, the adopted method of service does not have to be absolutely certain to provide notice in every instance. *Mullane, supra.*

■ Since the Ordinance requires accumulation of three (3) unpaid and un-appealed tickets before one's vehicle is subjected to the risk of having a wheel boot placed on it, offenders are given notice—via the parking ticket—no less than three times prior to the use of a wheel boot that

the City believes a violation has occurred and that if a total of three tickets are issued, the violator's vehicle could be disabled with a wheel boot. Accordingly, the Court believes that Bentonville's parking tickets not only offer notice of each parking violation, but also provide notice of the available appeals process which, in turn, equates to notice of an opportunity to be heard on violations *prior* to *any* risk of seizure or deprivation due to two-hour parking violations. As already noted, the parking ticket also provides simultaneous notice of the specific administrative procedures available to appeal the tickets themselves, the exercise of which minimizes the risk of future placement of the wheel boot on the vehicle. In this Court's view, this notice of opportunity to supply the governing authority with reasons why the ticket should be dismissed or otherwise disposed of satisfies a fundamental requirement of due process. *Cleveland Board of Education v. Loudermill,* 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985).

■ (b) *Meaningful Opportunity To Be Heard*—The evidence indicates that violators who have received the wheel boot on their vehicle at the hands of the City of Bentonville (and there appears to have been only one—the plaintiff) must pay the $25.00 booting fee and all outstanding tickets in full *prior* to having the boot removed from their vehicle.

Several cases have held—and this Court believes—that, although a pre-deprivation hearing may not be practical or appropriate under these circumstances, there are no impediments to providing a proper post-deprivation hearing concerning the placement of the wheel boot.

The Court's examination of the notice provided to an offender (by the ticket) shows that—unlike the case concerning the instant parking violation then being asserted—nothing contained therein gives

notice to the owner of the vehicle of any right to contest the validity of the placement of the wheel boot. Nor is there anything in the ticket notice which clearly explains when and how the wheel boot may be removed or why and when the $25.00 fee might be imposed.

On the evidence presented, it is clear that neither the Ordinance in question nor any other statute, rule or regulation of the City of Bentonville provided for either a pre-deprivation hearing or a post-deprivation hearing concerning placement of the wheel boot on a citizen's vehicle. Accordingly, the Court must conclude that, despite fair *notice* that the accumulation of three (3) unpaid and un-appealed parking violations could subject the violator's vehicle to having a wheel boot placed on it, no notice of any meaningful opportunity to be heard was supplied to plaintiff either before or after the placement of the wheel boot on his vehicle.

It appears from the evidence presented that there is no procedure in place for either a pre-deprivation or a post-deprivation process. Neither the Ordinance nor any policies implementing it provide plaintiff or any other violator an opportunity to post a bond in lieu of payment of outstanding tickets in full; or to request a hearing; or to lodge an administrative appeal of the placement of the wheel boot as erroneous. This lack of any process which would provide an offender with a meaningful opportunity to be heard concerning the placement of the wheel boot distinguishes this case from those relied on by the City and renders them inapposite. Accordingly, the Court is obliged to conclude that the failure to provide such a meaningful opportunity to be heard on the matter amounts to a violation of the Fourteenth Amendment. *See Grant v. City of Chicago,* 594 F.Supp. at 1449–1450.

■ In so determining, the Court notes that its conclusion cannot be and is not affected by the probability that affording plaintiff post-deprivation due process in this case would most likely have led to the same result. It clearly appears that plaintiff had no defense on the merits—he admits having received three parking violations which he neither paid nor appealed. As is the case in many (if not most) cases, constitutional safeguards protecting all citizens rarely gain attention when they protect the rights of the falsely or mistakenly accused—instead, it is when they protect the rights of those who appear to be justly accused that they are most noticed. Nevertheless, the safeguards of procedural due process—like the presumption of innocence—must be applied in every case regardless of any pre-conceived notions about the merits of any deprivation of life, liberty or property.

(c) *A Fair and Impartial Process*—Inasmuch as the Court has concluded that the City of Bentonville did and does not have in place either an appropriate pre or post deprivation process, there is no basis for a discussion of whether such is or would be fair and impartial. *See City of Los Angeles v. David,* —— U.S. ——, 123 S.Ct. 1895, 155 L.Ed.2d 946, 2003 WL 21135304 (U.S. May 19, 2003) (discussion of when constitutionally required process is "due").

9. While unnecessary to the Court's decision, the Court rejects plaintiff's contention the language of the Ordinance is unconstitutionally vague or ambiguous. The language challenged appears in the Ordinance and the ticket, respectively, as follows:

That any vehicle incurring $45.00 in unpaid fines shall be subject to having a parking boot placed on the vehicle. all unpaid fines, in addition to a $25.00 boot removal fee, must be paid in full prior to the removal of such parking boot from the Offending vehicle.

Three unpaid tickets can result in your vehicle being disabled with a wheel boot and an additional $25.00 fee.

As already noted, the Court believes that the language is sufficient to provide notice—as far as it goes. Its infirmity, as set forth above, is that it does not go far enough.

The Court also rejects plaintiff's contention that a warrant is needed prior to placement of a wheel boot on vehicle which is illegally parked on the city's streets. In light of the Court's ruling, discussion of this contention is not warranted. However, the Court states its view that the legal authorities do not support it.

10. For reasons stated above, the Court concludes that the lack of any due process with respect to challenging the placement of the wheel boot on a violator's vehicle invalidates Bentonville City Ordinance 2001–140 and the same shall be declared unconstitutional.

11. In light of the foregoing conclusion, it follows that the remaining issues of damages, costs and attorney's fees remain subject to determination by a jury on the scheduled trial date.

12. The Court now turns to a discussion of plaintiff's claims for damages against the defendants in their individual capacities.

■ The Court believes all three—Brandon Carter, Lt. Spradlin and Mayor Coberly—are entitled to qualified immunity with respect to the plaintiff's claims against them. The undisputed evidence is that Mayor Coberly relied, in good faith, upon advice from the City's attorney when approving Ordinance 2001–140 and that Lt. Spradlin and Mr. Carter were each acting in good faith in an effort to perform their respective jobs and to enforce the City's ordinances as written. Thus, there is no evidence that any of these defendants abused their offices, or knowingly and will-fully violated the law, or intentionally set out on a course of conduct to violate Gross' constitutionally protected rights. *Warner v. Graham*, 845 F.2d 179, 182 (8th Cir. 1988). The Court also feels obliged to observe that the law in this area of "wheel booting" is not yet patently clear and thus, the Court is not disposed to conclude that the Bentonville City Council, its attorneys, or its Mayor, would have reasonably and necessarily believed that Ordinance 2001–140, as written and enacted, is violative of the due process clause of the Fourteenth Amendment. *Buckley v. Rogerson*, 133 F.3d 1125, 1128 (8th Cir.1998). Finally, the Court finds no fault with the City's reliance on legal authority to the effect that municipal officials are "not required to guess the direction of future legal decisions." *Mitchell v. Forsyth*, 472 U.S. 511, 535, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985).

13. The Court feels obliged to observe that—as noted by Judge Easterbrook in *Saukstelis v. City of Chicago*, 932 F.2d 1171 (7th Cir.1991)—"The City's job of collecting fines for parking in forbidden zones and like offenses is hard to do." In addition, this Court—like others addressing similar problems in other cities and other cases—is cognizant of the parking shortage in the downtown areas of most cities (including Bentonville); of the attendant problems for merchants conducting business and professionals offering services on and near the downtown areas (such as the Bentonville Square); and of the difficult and sometimes unpleasant tasks faced by City officials and employees who must strictly regulate scarce parking and receive the brunt of citizen criticism.

The plaintiff here did not challenge—and the Court expressed no opinion on—the City's underlying authority to regulate parking on its streets and/or to impose sanctions for the violation of valid parking ordinances. Plaintiff has challenged only

the due process afforded by the City of Bentonville in connection with its enforcement of otherwise valid two-hour parking restrictions. It is only on this specific challenge (concerning the placement of the wheel boot without due process) that the Court finds that plaintiff has prevailed. Accordingly, the Court's decision herein should not be read or understood to affect the City's exercise of its police powers— including those "aimed at the scoff-law who habitually violates parking regulations and ignores tickets placed on his car." *Bricker v. Craven,* 391 F.Supp. 601 (D.Mass.1975)

IT IS THEREFORE ORDERED AND ADJUDGED, for the reasons stated hereinabove, that defendants' Motion for Summary Judgment (document # 18) should be, and it hereby is, granted in part and denied in part. Accordingly, defendant's Motion is granted on the issue of qualified immunity and plaintiff's first amended complaint against defendants Brandon Carter, Dennis Spradlin and Terry Coberly dismissed with prejudice. The remainder of defendants' motion for summary judgment is denied.

IT IS FURTHER ORDERED AND ADJUDGED that plaintiff's Motion for Summary Judgment (document # 23) should be, and it hereby is, granted in part and denied in part. Accordingly, the motion is granted as to the constitutionality of Bentonville City Ordinance 2001–140 and the same declared unconstitutional: it is denied with respect to plaintiff's claims against the defendants in their individual capacities.

IT IS FURTHER ORDERED AND ADJUDGED that Bentonville City Ordinance 2001–140 be, and it hereby is, declared as unconstitutional and IT IS HEREBY STRICKEN.

THE CLERK OF THE COURT IS DIRECTED TO LEAVE THIS MATTER OPEN FOR THIRTY (30) DAYS IN ORDER FOR THE COURT AND THE PARTIES TO RESOLVE ANY REMAINING ISSUES.

IT IS SO ORDERED.